The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. Our first case for argument this morning is United States v. Whitledge. I see Mr. Hillis. How about Ms. Murkowski? Mr. Murkowski should be coming in momentarily, Judge. I apologize for the delay. All right, Mr. Murkowski, we're ready to proceed. Mr. Hillis. May it please the office. I represent Mr. Whitledge. In this case, there is one error that we are wishing to get remanded and the case remanded for. And, of course, the District Court is required to calculate the guideline range correctly. When it doesn't, that is a significant procedural error under Gaul. And the particular procedural error in this case is the District Court denied my client the minor rule reduction that he would otherwise be entitled to under 3B 1.2C if the factors had been applied and they weren't. The District Court, instead of considering the necessary factors that are listed in the guidelines in its commentary or, for that matter, the case law, resorted to the idea that a large drug quantity was a disqualifier and it made somebody ineligible for the minor rule reduction. Of course, that's just not correct. The District Court should have considered the guideline, commentary, the relevant case law. It did not. As a consequence, it erred when it made a determination to disqualify my client on a factor that the guidelines don't even consider and don't use as a disqualifier for somebody to get the minor rule reduction. So, of course, we have the transcript and it lays it out pretty clearly what the District Court did consider and that's at appendix page 28. And at page 28, it refers only to the quantity of drugs that were involved. The government points to other factors the District Court considered, but it didn't consider those things in the relevant moment. It considered what my client did, how much drugs there were involved in the offense, and things like that as part of doing the calculus for the amount of drugs that were issued in the case. Mr. Hillis, you're not suggesting that the amount of drugs is irrelevant to the determination, are you? You're just arguing that it, that as a whole factor doesn't disqualify you, is that correct? That's correct, Judge. So, the nature of the offense is a pertinent consideration, the person's involvement in it, etc. But under Crookshank, which is the Eleventh Circuit case, and Saines, which is the Seventh Circuit case, these cases talk about quantity, and quantity is not a disqualifier. In the Eleventh Circuit, you use the clear air standard of review that the government is saying should apply here. And, of course, we disagree with the standard of review being clear air, but we would prevail even under Crookshank in the Eleventh Circuit's analysis applying that as the standard of review. So, what the district is supposed to consider, Judge Sandberg, is the defendant's understanding of the criminal activity, of the structure, his participation and planning in the criminal activity, the degree of his decision-making authority, and the degree that he stood to benefit from the criminal activity. None of these factors were considered by the judge when he denied the minor role. And we have an individual here, Mr. Whitledge, who was involved in this offense for one month, and the quantity was not some huge quantity that it should tilt automatically against any minor role reduction. His degree of understanding, we don't know that. His contribution and proceeds that he might have expected from this is also an unknown. Sure, he delivered drugs one time and delivered money another, but the government's not said that being a courier is enough to disqualify somebody either. In the case law, of course, we disagree. The district court made that finding that your client jointly funded the third shipment with his co-defendant and girlfriend. I don't know that he did jointly fund. The district court specifically made that factual finding, which we would have to determine was clearly erroneous. Well, the amount of the contribution would then be about how much my client contributed to the $12,000 that he delivered. So, if the financial contribution is a very serious consideration, we should know, of course, was it a dime, was it a dollar, was it $12,000? We just don't know that. So, the financial contribution really doesn't tell us much in this case. But the district court relied on the statement by the co-defendant that it was, and the co-defendant said it was a lot more than a $12,000. My client made a statement, and it was in a police officer's report, but it was not a proper statement that was provided to the district court. And so, once the burden... It was not proper? Is that what you said? I don't recall that there was a proper statement that was admitted as part of the evidence judge. And so, once my client denied and disputed the factors that are pertinent to the analysis, the district court would then come in with evidence to establish what it was that my client did. And rather than leave its work, the government relied only on statements that were culled from some police report, apparently, about what this person did. He was trying to curry favor, of course, as a confidential source. Whether she is reliable, etc., is very much an issue in our view. And the district court, of course, said my client wasn't especially reliable, and we accept that. But it doesn't mean that the evidence the government touted was reliable either. And instead of putting the government to its burden, this particular district judge relied on simply what the government said. And it didn't take into account what the guideline factors were, judge. And so, analytically, this case is not fitting within any of the cases the government cites and tries to rely upon. And the facts, of course, the government points to try to establish the minor role reduction weren't used by the judge at appendix page 28. It's a sentencing transcript where the judge said that the quantity was disqualified. So, if we then consider some of the things the government points to, we're talking about things where the government says you performed an essential or a necessary activity within the criminal offense. And, of course, but that's not a disqualifier either. And the case law says it's not. So, performing an essential task doesn't disqualify someone. Having a certain drug quantity doesn't disqualify somebody. And there's also a matter of my client's romantic involvement with the individual who led the conspiracy with Scarberry. There's no boyfriend-girlfriend rule in the Seventh Circuit which establishes criminal liability or makes somebody ineligible for a role reduction. And then, finally, my client was not like in the Bautista case the government relies on, constantly present. He was not somebody who was exerting either any decision-making authority for that matter. And so, all of these things distinguish this case from the cases the government seeks to rely on to establish minor role. So, in our view, Judge Saney, Judge Kaney, Judge Easterbrook, the government simply didn't need its work. And the district court then could not properly engage in an analysis. And it didn't as page 28 in the appendix shows. So, with that, I'd like to reserve the balance of my time unless the court has any questions. Thank you, Mr. Hillis. Mr. Murkowski. Your Honors, may it please the court, counsel, Christian Murkowski appearing on behalf of the United States. I'll first address the issue of the standard review. This court has repeatedly applied a clear error standard review to the denial of a minor role reduction. It did so in United States v. Bautista. It did so in United States v. Saints. It did so in United States v. Sandoval, Alaska. The issue is clear that this is a factual determination. Application note 3C indicates that the court must make this determination based on the totality of the circumstances and that this is an intensive factual question. And this was a factual determination by the district court concerning the issue of drug quantity that the defendant has raised in terms of it was in fact the defendant himself who linked the issue of drug quantity with the issue of the minor role reduction. Defense counsel below argued essentially that these two issues in the defense counsel's words dovetailed. The argument was essentially that because the defendant played such a minor role in the conspiracy, he could not have been aware of the total quantity of methamphetamine that was being trafficked by the conspiracy. The district court reasonably responded to that argument, noting that because the defendant did play an integral role in the conspiracy, because he had knowledge of the scope and structure of the conspiracy, and also because he committed acts in furtherance of the conspiracy, he had to have known the quantity, the larger quantity of methamphetamine that was being trafficked by that conspiracy. And consequently, he was not entitled to a minor role reduction. This analysis is the same analysis that this court applied in United States versus Sandoval of Alaska. In that case, the district court noted that the defendants that the quantity was a factor that gave effect to the role that the defendant played in the conspiracy. In that case, the defendant served as a courier over a period of time and repeatedly served as a courier for large quantities of controlled substances. What impact should the court's statement during sentencing that you are the least culpable member of the conspiracy have on our analysis? Your Honor, I don't believe it should have a significant role on your analysis. I believe the court's reference to least culpable was in the context of, in comparison to, my mistake, Your Honor. Are you referring to the court's statement in United States versus Sandoval of Alaska? No, the court's statement here during sentencing. The court said something along the lines of you were the least culpable member or the least culpable person here. I believe the court was speaking in the context of compared to the ringleader of the conspiracy, Ms. Scarberry. And as a result, I don't believe that that would impact the analysis with regard to Mr. Whitledge. Mr. Whitledge, Mr. White were average members of the conspiracy in comparison to Ms. Scarberry, who could be considered a ringleader of the conspiracy. In terms of the analysis performed by the district court, I would note that the district court did, in fact, rely on the facts in the record. The court did apply the first factor and the fourth factor articulated under Application Note 3C. The first factor considers whether the defendant knew the scope and structure of the criminal activity. And the district court emphasized that Mr. Whitledge had to have known the scope and structure of the criminal activity. First, because he purchased methamphetamine from Ms. Scarberry, thus knew she was involved in methamphetamine trafficking. And also because he had an intimate relationship with Ms. Scarberry. And reasonably inferred that two individuals who share an intimate relationship shared details about their personal lives, potentially including illegal conduct that is committed by one of the members in that relationship. In addition to that, the court applied the fourth factor under Application Note 3C, which considers the defendant's participation in the criminal activity itself. And the court, in doing so, credited the statement of Ms. Scarberry. The court emphasized that Mr. Whitledge was directly involved in the criminal activity. He financially contributed to the sum of $12,000 with Ms. Scarberry in order to finance the purchase of three kilograms of methamphetamine. He received that methamphetamine with Ms. Scarberry and then he helped Ms. Scarberry distribute that methamphetamine. The court also declined to credit the statement, the denials of Mr. Whitledge that were made in court. I believe that the defendant is engaged in burden shifting at this point. The court was within its right to credit the statement of Ms. Scarberry. Ms. Scarberry's statement had independent reliability and corroboration. First, it was a Mirandai statement recorded by the police. Second, Ms. Scarberry pled in front of the district court. She was subsequently sentenced by the district court. The district court had the opportunity to review her demeanor, compare that to the demeanor of Mr. Whitledge in his statements. His inconsistent statements that he made in court. And thus was in the best position to credit Ms. Scarberry's statement over that of Mr. Whitledge. In addition to that, I would note that this is a very different situation from the situation that the defendant cites in the United States versus Helding. The court emphasized in that case that it was an absolutely uncorroborated statement of an anonymous confidential informant that was contained in the PSR. And the court determined that that alone was insufficient. Ms. Scarberry is in a completely different position than an anonymous informant. Her identity was known to all parties. And again, she pled guilty in open court. She was subsequently sentenced. I also believe she gave a proffer statement, but I don't believe that that is in the record. In addition to that, Mr. Whitledge wants to compare himself to the defendant in the United States versus Sains. But Mr. Whitledge's activity far exceeded that of a one-time courier in the United States versus Sains. The courier in the United States versus Sains performed a one-time shipment of a sum of money that the courier was not even aware of the amount of money that was involved in that shipment. In contrast, here, Mr. Whitledge financially contributed to the purchase of three kilograms of methamphetamine. He obtained three kilograms of methamphetamine with Ms. Scarberry, and he subsequently assisted her in distributing that methamphetamine. That was far more than a one-time action by a drug courier. In addition, he had an intimate relationship with the ringleader of the conspiracy, Ms. Scarberry. And in that sense, the defendant is in the same position as the defendant in the United States versus Batista. This court noted in Batista that that defendant in Batista was a predominantly, was described as a predominantly silent figure who accompanied the defendant in that case, or the ringleader of the conspiracy in that case, during drug negotiations to methamphetamine labs and also transported pseudoephedrine methamphetamine on behalf of the ringleader of that conspiracy. Mr. Whitledge is in a similar position with relation to Ms. Scarberry, the ringleader of this conspiracy. He had an intimate relationship with her, so he was close to her in the same way that the defendant in Batista was close to the ringleader of that conspiracy. And in addition to that, he committed overt acts that furthered the conspiracy. He financially contributed to the purchase of methamphetamine. He helped distribute that methamphetamine. Ultimately, your honors, Mr. Whitledge was an integral member of this conspiracy. He was not substantially less culpable than the other members of the conspiracy. He had knowledge of the scope and structure of the conspiracy because of his intimate relationship with Ms. Scarberry. And he committed overt acts that were essential to the conspiracy, particularly the financing of the purchase of methamphetamine and a subsequent distribution of that methamphetamine. The district court did not err in denying the minor role reduction. I'd ask this court to affirm. Thank you. Thank you, counsel. Anything further, Mr. Hillis? Yes, Judge. Relevant culpability is a significant consideration in determining whether somebody gets a minor role reduction. And if the district court is to be credited with its various findings, of course, a finding about somebody's relative culpability should be a huge consideration in ultimately determining minor role. The government disregards that. It focuses really on facts that are necessary to prove the conspiracy. But that's not what's at issue with the minor role. The minor role, saying that somebody is necessary and essential, doesn't establish that they're liable. Saying that they may have contributed some amount of money, but not telling us what it is, doesn't really tell us what the proprietary result is from somebody's participation, such that they should be denied the minor role. The effort to say because you're romantically involved, you must therefore have criminal knowledge, I think, falls flat. I'm romantically involved with my wife. I don't know all the things that she does, and I don't think that she's a criminal. But if she is, it would be a surprise. And I don't think that her criminal activity can be imparted to me by some form of knowledge to romance. We also have some problems with the government's efforts to show that this is some standard of review other than de novo. We'd rely on the Esposito case recently from the circuit that's cited in our brief. It says procedural errors at sentencing are reviewed de novo. And so that is important. And so far as the government saying that the district court concluded that there was romantic involvement and therefore knowledge, that is speculation by the district court. If it did engage in that sort of thing, it would be improper for the district court to make that sort of speculation. Testimony would be adequate. The government had every ability to bring in the Scarberry to testify. It talks about things like being Miranda eyes and entering a guilty plea as being sufficient indicia to establish reliability. I don't know how it hasn't cited cases that say that. Of course, you can't have a person be guilty until they plead guilty or found guilty by a jury. So determination of guilt does not correspond with reliability. We have a lot of people who are found guilty who are not then reliable witnesses. That just doesn't move the needle. In fact, the government has cited nothing really by way of its reference case law and facts to suggest the district court properly applied to minor rule criteria in denying the reduction. And so because of that, we would ask the court to consider the case law that's been cited. Why the facts to the case and determine this case warrants a remand due to lack of findings, especially because, again, the district court relied almost exclusively, if not exclusively on the drug quantity to say that my client is not entitled. We asked the court vacate. Thank you, Mr. Hill is the case is taken under advisement. Our next case for.